UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAMMY MELTON DEARMAN,

Plaintiff,

v. Case No.: 3:20-cv-1278-DNF

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

## OPINION AND ORDER

Plaintiff Tammy Melton Dearman seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

**C. Procedural History**

Plaintiff filed an application and amended application for a period of disability and disability insurance benefits and supplemental security income on May 29, 2017, alleging disability beginning October 5, 2015. (Tr. 73, 74, 225-34). The applications were denied initially and on reconsideration. (Tr. 73, 74, 130, 131). Plaintiff requested a hearing, and on December 20, 2019, a hearing was held before Administrative Law Judge Guy Koster. (Tr. 40-72). On February 19, 2020, the ALJ entered a decision finding Plaintiff not under a disability from October 5, 2015, through the date of the decision. (Tr. 10-25).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 10, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 11, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 24).

**D. Summary of ALJ's Decision**

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. (Tr. 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2015, the alleged onset date. (Tr. 12). The ALJ noted that Plaintiff worked after the alleged onset date, but found that the work

performed did not constitute substantial gainful employment. (Tr. 12-13). At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar and cervical degenerative disc disease; and left foot cavovarus foot deformity." (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) with additional limitations. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps, but is unable to climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme cold temperatures and hazards, such as unprotected heights, and dangerous moving machinery. The claimant is limited to work that allows for a stand option, meaning the claimant can alternate between sitting and standing every 30 minutes while remaining at the workstation. The claimant can occasionally push, pull, and lift overhead with the bilateral upper extremities.

(Tr. 16).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a cook. (Tr. 23). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (44 on the alleged disability onset date),

education (limited), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23-24). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) table worker, DOT 739.687-182,[1] sedentary, unskilled, SVP 2

(2) addresser, DOT 209.587-010,[2] sedentary, unskilled, SVP 2

(3) food/beverage order clerk, DOT 209.567-014, sedentary, unskilled, SVP 2

(Tr. 24, 70). The ALJ concluded that Plaintiff had not been under a disability since October 5, 2015, through the date of the decision. (Tr. 25).

## II. Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ properly considered Plaintiff's subjective complaints of pain; and (2) whether the ALJ properly considered Plaintiff's alleged mental impairments. (Doc. 29, p. 19, 22).

### A. Subjective Complaints of Pain

Plaintiff argues the ALJ did not properly consider Plaintiff's subjective complaints of pain. (Doc. 29, p. 19-22). Plaintiff claims the ALJ evaluated Plaintiff's pain by recounting the objective evidence supporting the RFC determination, but

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

[2] In a clerical error, the ALJ copied the same DOT number for both the table worker and addresser jobs. (Doc. 24). The Court adopted the vocational expert's correct DOT numbers for these positions. (Tr. 70).

ignored other nonobjective matters. (Doc. 29, p. 20-21). For example, Plaintiff claims the ALJ ignored Plaintiff's attempts to seek medical treatment for pain symptoms, ignored the fact that she met with a pain management physician every month for four years, ignored her compliance with the physicians' orders, ignored the fact she was on the strongest pain medication available, ignored all of the pain relief measures she tried such as injections, physical therapy, rest, and hot/cold packs, ignored her pain levels of 7 or 8 out of 10 while on pain medication, and ignored referrals to specialists. (Doc. 29, p. 21-22). Plaintiff contends that with the record including "this much evidence of attempts at pain relief, those factors should have been considered by the ALJ, mentioned in the decision, and weighed in favor of finding Ms. Dearman more limited. The ALJ's failure to state how he evaluated this type of evidence violates the rules governing pain evaluation and calls for remand." (Doc. 29, p. 21-22).

The Commissioner argues that the ALJ properly considered the relevant evidence and Plaintiff's condition as a whole when evaluating her subjective statements. (Doc. 32, p. 8). The Commissioner contends that substantial evidence supports the ALJ's findings that Plaintiff's subjective complaints were inconsistent with the medical and other evidence of record. (Doc. 32, p. 8). While the ALJ acknowledged Plaintiff's hearing testimony, the Commissioner claims that the evidence as a whole supports the RFC. (Doc. 32, p. 9).

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors in conjunction with all of the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting

*Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ made these findings as to Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 20).

As suggested in the regulations, the ALJ discussed Plaintiff's daily activities. (Tr. 17). Citing Plaintiff's testimony about daily activities, the ALJ noted: Plaintiff's son was a great help in maintaining the household; Plaintiff claimed to rest intermittently while performing daily activities, such as cooking; she had issues

getting dressed or completing activities that require certain exertions; she had difficulty pulling clothes out of the washing machine; and on certain days, her symptoms were so severe that they prevented her from leaving the bed. (Tr. 18). In contrast, the ALJ also noted that Plaintiff performed light household chores, completed Sudoku puzzles, watched television, and went out with her boyfriend. (Tr. 17). And the ALJ noted that Plaintiff stopped working – not because of her ailments – but because her son fell out of tree and sprained his arm, preventing her from returning to work. (Tr. 18).

The ALJ thoroughly discussed Plaintiff's alleged pain throughout her body and the duration, frequency, and intensity of the pain. (Tr. 18-23). The ALJ noted that Plaintiff took morphine, Flexeril, gabapentin, ibuprofen, temazepam, and used voltaren gel for pain relief, and testified that the only side effects from these mediations were dry mouth and constipation. (Tr. 17). He also noted that Plaintiff had undergone pain management, injections, physical therapy, as well as other conservative treatment. (Tr. 15, 17, 19). And the ALJ discussed other objective medical evidence such as radiological results, EMG/NCV studies, MRIs, and medical examinations to assess Plaintiff's RFC limitations. (Tr. 20-23).

In sum, the ALJ considered the consistency of Plaintiff's statements with all of the medical and other evidence of record to determine that her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely

consistent with the record evidence. After considering the record as a whole, the ALJ clearly articulated explicit reasons for his findings. And he assessed an RFC limited to sedentary work with additional limitations to accommodate Plaintiff's impairments, including subjective complaints. Plaintiff also failed to articulate let alone show that she had any additional work-related limitations associated with her alleged pain. For these reasons, substantial evidence supports the ALJ's decision related to Plaintiff's subjective complaints.

**B. Mental Impairments**

Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments would cause no more than minimal limitations in her ability to do basic work activities. (Doc. 29, p. 22). Apparently, Plaintiff claims that her mental impairments were severe and caused limitations in her ability to perform basic work activities. (Doc. 29, p. 22-24). Plaintiff asserts her primary care physician prescribed medication for her anxiety, panic attacks, and depression. (Doc. 29, p. 22-23). She also argues that the ALJ should have adopted limitations found in Dr. Sandrik's June 2018 consultative mental examination rather than adopting the findings of Dr. Knox's October 23, 2017 consultative mental examination. (Doc. 29, p. 23-24).

The Commissioner argues that Plaintiff failed to prove her mental impairments were severe and failed to show that they caused significant work-

related limitations. (Doc. 32, p. 9). The Commissioner contends that the ALJ properly considered Plaintiff's mental limitations in the four broad functional areas of the paragraph B criteria. (Doc. 32, p. 10; citing 20 C.F.R. §§ 404.1520a(b)(2), (c)(3), (e)(4), 416.920a(b)(2), (c)(3), (e)(4)). Overall, the Commissioner argues that the ALJ considered all the records about Plaintiff's mental impairments when finding them non-severe. (Tr. 16).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). Said a different way, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that

she has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment . . . is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's mental impairments of anxiety, depression, and panic attacks as a severe impairments, any error is harmless because the ALJ characterized other impairments – lumbar and cervical degenerative disc disease, and left foot cavovarus foot deformity – as severe. (Tr. 13). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then

becomes whether the ALJ considered all of Plaintiff's limitations, including mental impairments, in assessing the RFC.

The ALJ thoroughly discussed Plaintiff's mental impairments and considered them in assessing the RFC. He considered the broad functional areas of mental functioning set forth in paragraph B. (Tr. 15). He found Plaintiff had no limitations in understanding, remembering, or applying information and in adapting or managing oneself. (Tr. 15-16). He also found Plaintiff had mild limitations in interacting with others and concentrating, persisting, or maintaining pace. (Tr. 15-16).

The ALJ noted that many earlier and recent treatment entries documented normal mental findings. (Tr. 13). He considered Peter Knox, M.Ed., Psy.D.'s October 23, 2017 consultative psychological evaluation. (Tr. 13-14, 644-49). The ALJ noted that Dr. Knox found Plaintiff had no significant impairments in the area of work-related mental activities, IQ, concentration, or persistence, and concluded her memory was intact. (Tr. 14).

The ALJ also thoroughly considered Lauriann Sandrik, Psy.D.'s June 19, 2018 consultative psychological evaluation. (Tr. 14, 655-58). The ALJ acknowledged that Dr. Sandrik gave Plaintiff a PHQ-9 test, which suggested severe symptoms of depression, and a GAD-7 test consistent with anxiety. (Tr. 14). The ALJ noted that these tests were based on Plaintiff's subjective symptoms and "do

not represent the opinions of medical providers." (Tr. 14). The ALJ contrasted Dr. Sandrik's findings that Plaintiff's concentration was mildly impaired and her insight and judgment were fair with Plaintiff's statements to Dr. Sandrik that she helped take care of her friend's teenaged children, took care of her friend's cats, did not need reminders to take her medication, could prepare meals with assistance, could do laundry, left home approximately 4 days per week, could shop, used a smartphone, maintained a Facebook profile, played games, paid online bills, interacted with friends, played billiards, listened to karaoke, maintained her finances, finished most tasks, and dealt with small changes in her routine. (Tr. 14). Dr. Sandrik found Plaintiff capable of understanding, remembering, and completing simple instruction, yet her persistence and pace may vary due to pain. (Tr. 14). Dr. Sandrik also found that Plaintiff may have difficulty completing complex instructions. (Tr. 14).

The ALJ then articulated specific reasons why he agreed with some portions of Dr. Sandrik's opinion, but not others:

> The undersigned has considered Dr. Sandrik's report. The undersigned agrees with Dr. Sandrik that the claimant appears to be mentally capable of understanding, remembering, and completing simple instructions. The undersigned also agrees with Dr. Sandrik that the claimant is capable of at least superficially appropriate social interaction with co-workers, supervisors and the general public, and that she appears capable of adapting to changes in her routine and avoiding hazards.

> However, the undersigned disagrees with Dr. Sandrik's conclusion that the claimant may have difficulty completing complex instructions, and that her persistence and pace may vary due to pain. In contrast, Dr. Knox noted no significant impairment in the area of work-related mental activities IQ, concentration or persistence, and concluded her memory was intact, and assigned the claimant a GAF of 65. The claimant's treatment history has been very conservative in nature. Entries in the record document normal findings. Given this, the undersigned finds Dr. Knox's report and Dr. Conger's conclusion that the claimant does not have a severe mental impairment to be more persuasive. The claimant's medically determinable mental impairment of an affective mood disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

(Tr. 15). Thus, the ALJ articulated clear reasons why he found Dr. Knox's report more persuasive than Dr. Sandrik's findings and why he did not adopt Dr. Sandrik's limitation findings.

Thus, the ALJ thoroughly considered Plaintiff's mental impairments in combination with Plaintiff's other impairments and the record as a whole in finding Plaintiff's mental impairments non-severe and in assessing Plaintiff's RFC. Substantial evidence supports the ALJ's decision on Plaintiff's mental impairments and RFC assessment.

## III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 25, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties